v. United States. May it please the Court, I am Anthony Sheehan and I represent the United States. This case is a tax case that involves the deduction of multiple damages arising out of a settlement of a false claims act proceeding against Fresenius Medical Care. Of the civil settlement of $385 million, the IRS allowed a deduction of approximately two-thirds, leaving $127 million before the District Court. The District Court allowed an additional $95 million deduction, resulting in a refund of $31 million, and that is what's on appeal today. The section of the Internal Revenue Code that governs the deductibility is Section 162. Section 162A allows the deduction of ordinary and necessary business expenses. But Section 162F provides an exception for any fine or similar penalty paid to a government for the violation of any law. 162F is a codification of prior case law, where the test between what is compensatory and deductible, or punitive and not deductible, has always been, going back to the earliest cases, like tank-truck rental, tank-truck rental by the Supreme Court, the purpose of the money, or in other words, what is the intent of the decision-maker. The primary decision-maker is always the legislature. If the statute answers the question, the inquiry ends. If it's a compensatory statute, it's deductible. If it's punitive, it's not deductible. However, certain statutes, like the False Claims Act, have statutes where there's a dual purpose, where some of the damages are dual purpose. In that case, you have to look further along the decision-making chain, the judge and the jury in litigated cases, or in this situation, the parties themselves in a settled case. Now, the False Claims Act allows a variety. Let me ask you this, counsel, because it seems to me that the Department of Justice could save a whole lot of time for everybody. When you talk about settlement agreements, they're settlement agreements. And yet, in this particular case, you refuse to reach an agreement as to what constituted compensable and what constituted a penalty or a punitive in regard. It seems to me like a whole lot of waste of time if you would have just included that in the settlement agreement. Well, actually, Your Honor, Congress has asked the, so the False Claims Act is done by the Civil Division of the Department of Justice, and Congress has asked them the same question. And I could do no better than to tell you exactly what they have told Congress. First of all. Well, they tell Congress a lot of things. I'm sure of that. Well, the goal of a False Claims Act settlement is to get to a bottom line number that both sides consider fair, and it's based on their conception of the hazards of litigation. And as a matter of paper and pencil arithmetic, you can get down to that number either by saying here's the number no deduction or negotiating to a higher number and then trying to back down into it through a tax deduction. And the parties are going to negotiate with the background law, the background rules in mind. But there's a big difference between paper and pencil arithmetic trying to get back down to it and the real world difference of how you get there. First of all, Civil Division attorneys lack tax expertise. If they were to start negotiating. That's their problem, counsel. I mean, if they're going to try these kind of cases, they need to know something about it. The reason they don't, the reason the Department of Justice's policy is not to designate, not to describe anything, not to put a label on these amounts that would have tax implications is first of all, they would have to call in the IRS. They could do that. They certainly could call in the IRS, but in addition to all the discovery for a False Claims Act case, they'd have to do lots of discovery into the tax items of the taxpayer, try to figure out where this taxpayer is positioned and what are the other tax items and what is the impact of these tax items. If we allow this deduction. That's a long way around the tree when the IRS could have just easily said no. This is not a compensable item. It's a punitive matter, end of question. In other words, your direction of settlement negotiations would be it's not, it's punitive and that's the end of this settlement discussion. And certainly the IRS could come in and do that, but that gets us right back to where we are. Yeah, so the real answer to Judge Baldock's question is that the government in these False Claims Act cases, as a matter of its administrative convenience, has decided that the priority is let's get to a settlement and we'll worry about the tax consequences later, which produces litigation of the type that we've got. Well, yes, but however, you also have to consider that if we're going to start dealing with the tax consequences during the negotiations, we're going to start having to do discovery into those tax consequences. You're going to have to. Again, it comes down to administrative convenience. I understand why you don't want to do that. In any event, whether your approach to these cases is, you know, a process that was designed by a committee, you know, and has about eight legs instead of four, we're stuck with the situation now, so let's get to deductibility here. I have a couple of very specific questions. Your brief, in terms of the principal issue, relies very heavily, indeed almost exclusively, on the Ninth Circuit's decision in tally. Yes, it is the only decision out there before this. Okay, all right, so I have a couple of questions about that, all right? As I read tally, tally says that the answer to the question is controlled by the intent of the parties, and that that intent must be manifested by a written agreement by the parties as to tax characterization. Isn't that the reading of tally that you've been urging on us? Well, certainly, that is tally, yes, but I would add that tally did allow consideration of extrinsic evidence if the agreement is silent, but the burden is always on the taxpayer to show an agreement. That's fine, all right? But if you agree that tally allows for the filing of extrinsic evidence, you're talking, I think, about extrinsic evidence of intent? That is correct, yes, of course, in negotiations. But I've got a problem earlier up the chain, which is with the notion that the intent of the parties is the sole controlling factor, because in tax jurisprudence generally, while the intent of the parties is important, the economic reality of the situation is also important, and the view of tally that the government has taken gives no weight at all, indeed, leaves no room for the consideration of economic reality. Well, okay, first of all, the test, it goes back to the origin of the claim test. It goes back to what purpose is this payment to serve? And Congress or state legislature would have the first say in that as to how they structure the statute, how they structure the penalty statute at issue. If a statute is compensatory, it's deductible, even if it might have the coincidental effect of deterrence. If it is a penal statute, it's not deductible. But you've already told us in your initial remarks that the FCA serves both purposes. Yes, multiple damages serve both purposes. And the Supreme Court has told us that something more than single damages can be compensable. It serves both compensatory and punitive purposes. Okay. So the trick here for tax purposes, it seems to be, to figure out what over and above single damages, all right, can be compensatory, all right. You're trying to get us to focus on the intent of the parties to the exclusion of the economic substance or economic realities of the situation. And I find that anomalous in terms of tax jurisprudence in virtually any other type of situation, whether I'm reading decisions by the Supreme Court or by this court or anyone else. Well, in False Claims Act cases, which we're focusing on right here and which Tally was about was a False Claims Act case, the government is on the other side in both instances. The government is on the other side from the taxpayer in the False Claims Act aspect and he's on the other side when we get to the tax aspect of it. Now, the IRS certainly reserves the right to recast a transaction in line with economic reality. But we've got the Department of Justice doing the negotiations. They'll take anything, they'll take that with the great degree of seriousness which it deserves. What we're talking about, we're talking about under 162-F, what we're talking about is what was this payment designed to do? That's a statement of intent. And of course, the first intent is the legislature. However, if the legislature didn't speak to it and Congress did not, it created a dual purpose statute, you go on, what is the intent of the parties? What did they intend this dollar to do? It could do either thing because that's the nature of the penalty. So the question is whether it's compensatory or punitive. The burdens of the taxpayer. Is that a question of law or a question of fact? What we're dealing with here, and I agree with where the judge is coming from in reading Tally, those are apples and oranges is what we have here. Tally is a case before the tax court. In our case, the parties here paid the tax and then sought a refund. In Tally, they went before the tax court and didn't. And there, you've taken what the judge said in Tally and have argued that as a matter of law, this is what the court said. And that's not what the court did. In Tally, those were factual issues. And where I'm having problems is why didn't what the trial court did here by giving that question of what did the parties intend and how much was compensable and how much was punitive to the jury and say, you figure it out. And they did. Well, I would have two things to say about that. First of all, under tax law, you're getting to the same place. Whether you go through the deficiency proceeding in the tax court or a refund proceeding in a district court, you're still looking. I don't think you do. But go ahead. Secondly, we agree it's a factual issue. It's just which facts do you look at. Under the Tally rule, you look at the intent of the parties. Under the residual approach, the district court wants to push. Fortunately, here we only have the deal of interest. But under this approach, we would instead of just saying what did the parties negotiate, we'd be saying government, hand over all your time records. Hand over all the interest. Let's figure out if there could be thousands of claims here, the interest on each individual one. The residual rule could quickly get way out of hand because the tax payer would be. No more so, counsel, than what your position is. Your position would be 100% of the time the government wins. No, my position is that the parties under the Tally rule will negotiate to a number they think is reasonable without knowing that it's not deductible. Under the residual approach, the parties would have to fight over the tax consequences. Instead of agreeing that $10 million is fair, the government would hold out for a settlement of $15 million and say, well, we've figured out you're going to get a $5 million back of it in a deduction, getting back to the same $10 million. And that's called negotiation. And so, I mean, this is, so the answer to the question is you say that there's got to be an intent at the time of settlement that a specific portion of the settlement be deductible. And I ask you again why. That ignores, A, the economic realities. It also ignores the fact that in this case, we don't have to guess at what the parties intended. We know what the parties intended because the government and the taxpayer agreed not to agree. Their intent was to leave open the question of deductibility. So to the extent that intent is a relevant consideration in the calculus, why shouldn't that be the intent that gets primacy rather than this rather abstract concept that we measure intent only by looking to see whether the government and the taxpayer have agreed whether or not to deduct the specific portion of the settlement? I'll briefly answer that question. I'd like to reserve the remaining few seconds for rebuttal, if possible. The intent is it's deductible if it's compensatory. The taxpayer has to show that the parties agreed to a compensatory intent. I'd like to save, if possible, my remaining few seconds for rebuttal. Thank you. May it please the court. I'm Jim Bennett and represent Fresenius in this case. And we think that Judge Woodlock's decision in this case was absolutely correct in all respects. The idea that tax treatment can be dictated by a party's agreement is contrary to a century of tax law which says that you look to the economic substance of the transaction and not the words that are used. Counsel, let me ask you this. Do you agree with the government that tally stands for the proposition the government says it does? No. We think that they've overread it tremendously. Tally actually has a specific observation in it that neither party made any effort at all to quantify the government's actual losses in excess of single damages of 1.56. Here we had a whole trial about that. We quantified it and the jury found it within the evidence. In addition, in tally, there was some suggestion and evidence in the government's documentation that the 1.56 was their total losses and that the additional amount was, in the government's own word, a punishment. Here we had a whole trial about what was punishment and what wasn't punishment. And we presented evidence in a trial where the evidence is taken in the light most favorable to the verdict that interest was important, that interest was discussed, that the government was actually out the time value of money. We quantified it. This idea that it's hard to do that is we had a six-day trial of half days and we presented all this evidence. We took no discovery of what the government did in the investigation. It was a tax trial. It's just what juries around the country do every day, all around, saying what did it take to compensate the government. We think that tally is distinguishable on the facts because they made no effort to quantify it, that if they had made an effort to quantify it, the court wouldn't have been relegated to say, well, maybe at least there's an agreement. And so that's how it's distinguishable. It's a failure-proof case. Well, that may be. There is obviously some language in tally that can be, you know, what's troublesome to me. I agree with you that factually tally seems to be, it seems to be possible to distinguish tally. But I have to confess that at least to me, the government's reading of tally isn't an unnatural reading. I think Judge Woodlock gave it the same reading when he passed over it. Yeah. You know, or just may have realized that he wasn't bound by it, nor are we. Exactly. I agree with that and would note, of course, that tally in deciding or looking at the double damages and the needing for an agreement did not have the guidance of Vermont agency, which was decided in 2000 and says that double damages, which is all the jury awarded here, we only got to deduct double damages, not triple damages, says that double damages are remedial and was decided before Cook County, where Cook County comes out flat out and says interest is something that's important to think about in the compensatory purposes. And so whether the parties would have litigated tally differently and made different arguments and resulted in a different decision in light of the further definition of the purpose of the False Claims Act, you know, we can't put ourselves back and do that. But because of the way the case was presented and the lack of evidence that was presented on the government's losses in excess of singles, we don't know how the Ninth Circuit would have decided that if they had seen the evidence that we presented. But I do acknowledge, of course, as the court has noted, that there is language that says the agreement controls. But there's no other case in the history of tax jurors prudence that says that the subjective intentions of the parties control over economic substance. Delaney from this court. And you wouldn't be happy if we were the second? No, I would not. I don't think it's a good road to go down. I will mention that one of the reasons why the government says, oh, the False Claims Act is different is the government was our counterparty to this negotiation. The Washington Mutual case that we cite in our briefs was one where the government was the other side of the equation. And what the court in the Washington Mutual case said, which I think is directly on point here, which is tax-free treatment that the taxpayer got resulted by operation of the tax code. Treatment of rights depends not on the agreement of the parties at issue, but on the provisions of the code as applied to the transactions. And they didn't require the taxpayer to have negotiated it, put it into a bargain, or even said that it was important. And then the court goes on to say that one party to this was a governmental entity doesn't depart from the basic principle. So the question here is, were these compensatory damages or not? We presented extensive evidence that they were. The U.S. Supreme Court has defined compensatory damages under the False Claims Act as including interest. Judge Woodlock gave the jury guidance talking about the make-whole purpose of the FCA. The make-whole purpose of the False Claims Act comes straight out of U.S. Supreme Court jurisprudence. It's in Marcus and Hess from the 40s. It's in Bornstein from the 70s. It's in Cook County. And the Cook County court, the way that they termed it is very good for the jury trial right, which is to say the FCA is compensatory up until the point that full compensation is given. There's a tipping point that depends on the facts of each case. After the tipping point, it's punitive. And that's exactly what Judge Woodlock did here by presenting this question to the jury and to say it's a dispute of fact. Tell us how much was compensation. Tell us how much was punitive. And it was always in the instructions the burden on us to prove that. Said that the burden was on us the entire time. And we presented extensive evidence on that very subject. The government acknowledged that interest was part of the negotiations. Ms. Winkler's testimony on page appendix 224 through 228 actually said that her numbers with the multipliers included interest. And the government further testified that the only penalties sought ever were the amounts above three times damages and that there weren't any in the final settlement agreement. Well, I have a question in pondering this. Why doesn't the approach that you're wanting to take frustrate basically public policy by reducing the sting of what really was a punishment for wrongs that your company committed against the government? The government has in the cases under 162F draw this distinction. There is a criminal sanction for violating the False Claims Act. We pled guilty and paid $101 million that we aren't trying to deduct. And Judge Woodlock noted that that's where the sting of punishment came. In addition, the False Claims Act says that if you behave badly where you might have a public policy problem, there are damages in the form of per claim penalties that are totally unrelated to the losses to the government. Here, because our conduct was not so egregious and the negotiations show that on the civil side, the government decided not to seek those penalties at all because the conduct was not so egregious, they only sought damages. And then when we settled, not only did they only seek damages, they did not ask us to pay any more than essentially double damages on that, which the government has said is compensatory. So I would say that the False Claims Act case and doctrine does have sting where public policy could be implemented or affected if we were allowed to deduct a criminal fine, if we were allowed to deduct a $10,000 per claim penalty totally unrelated to it. But there is no question also that the False Claims Act is also designed just to make the government whole when the conduct shows that that's a proper means to do it. And also, Judge Baldock, note that we settled in our releases the common law causes of action as well. We settled breach of contract, we settled unjust enrichment, we settled all of those things too. The government came in to us and said we want X amount of money and some of these are going to be penalties because we don't like your conduct. We persuaded them to drop all of that. And so there's nothing at all that violates public policy here with deducting purely compensatory payments where we paid a $100 million fine. In fact, if you look at the Stevens case from the Second Circuit that Judge Woodlock cited, there an employee took money or embezzled money from his employer Raytheon and the Second Circuit held there that the criminal fine, of course, can't be deducted because it's punitive, but that the reimbursement that was made even under a criminal conviction was compensatory. And so I think that when Congress enacted 162F, Section 162F and said, okay, well, if it's a fine or similar penalty, you can't deduct it, and the IRS adopted regs that said if it's a compensatory payment to the government, it's not that, we're well within what public policy would encourage to be the case here. The question of the jury instructions are raised, I don't know if it's something that will come back up at all or not, but, you know, if the court looks at the appendix basically pages 409 to 415, you see that Judge Woodlock did exactly what I think the discussion here today would suggest that he should have, which is put the burden on us, prove what was not punitive, if there was some component that was not punitive, ask the jury to define what was compensatory, and do exactly that. And so we think that Judge Woodlock's reasoning and his order and his instructions are fully consistent with the case law. And the idea, of course, that in every False Claims Act case the government can win by default by simply not agreeing with us can't possibly be the outcome here. We presented evidence, actual sworn testimony, from both the government and from our own lawyers that these government lawyers in this case refused to talk to us about tax treatment. They put it in their letters to us saying we can talk settlement but we won't talk tax treatment, and then now the government wants to say that that controls, and we don't think that that's proper or consistent with this court's jurisprudence. Unless there's further questions, I'll cede the remainder of my time. Thank you, Your Honor. I would like to start off by saying the government is not trying to win under all circumstances. As I said before, the parties will negotiate to a settlement based on the underlying rules. If the rule is no deductibility, they'll arrive at a lower number rather than a higher number which takes into account the deduction. Secondly, the Supreme Court has consistently held not that multiple damages are compensatory. They have compensatory aspects and punitive aspects. What the district court did was say, well, we're going to put compensatory first, but the parties are negotiating against a ceiling. If the taxpayer is intransigent enough, as the district court acknowledged, they can get everything to be deductible because it will all be compensatory because it costs the government, the government's bill so much. But when the district court told the jury, as you put it, to put compensatory first, right, there was no objection to the jury charge on that basis. We, I'll answer your question, Your Honor. The government asked for repeatedly jury instructions under the tally rule. Those were denied. The objections are in the record. That's true, but the government never raised at the charge conference or in those instructions for that matter, the point that you're now making that it's wrong to tell, to prioritize and tell the jury compensatory first. That argument's made for the first time in this court. I would disagree, Your Honor, that when we asked for the tally rule or denied it, the tally rule would have taken care of that, but I see my time is up. Thank you. Thank you.